## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEVEN WARD JAMES<br>Plaintiff,<br><br>vs.<br><br>ZIONS BANCORPORATION, N.A. D/B/A<br>ZIONS BANK<br>Defendant | Case: 2:25-cv-00031<br>Assigned To : Pead, Dustin B.<br>Assign. Date : 1/13/2025<br>Description: James v. Zions<br>Bancorporation<br><br>**COMPLAINT**<br><br>FILED US District Court-UT<br>JAN 13 '25 PM01:29 |

### I. INTRODUCTION

1. This action arises from Zions Bank's ("the Bank") failure to accommodate Plaintiff's non-physical disabilities and subsequent retaliation in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181-12189, and its prohibition against retaliation under 42 U.S.C. § 12203.

2. As a public accommodation under Title III of the ADA, the Bank is obligated to provide reasonable modifications to its policies, practices and procedures to ensure equal access for individuals with disabilities. On November 6, 2024, the Bank failed to fulfill this obligation by refusing to accommodate Plaintiff's request and retaliating against him for asserting his rights under the ADA.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as this matter arises under federal law—specifically, Title III of the Americans with Disabilities Act.

4. Venue is proper in the United States District Court for the District of Utah, Central Division, under 28 U.S.C. § 1391(b), as the events giving rise to this action occurred at the Defendant's branch in Salt Lake City, Utah.

### III. FACTUAL BACKGROUND

5. On November 6, 2024, Plaintiff—a customer of the Bank for over five years—visited the Bank's 7th East Branch in Salt Lake City, Utah, to withdraw $50 for essential needs.

6. Plaintiff presented Utah's Mobile Driver License (mDL) via the GET Mobile ID phone application as identification for the transaction.

7. The Bank's teller and supervisor questioned whether the mDL was an acceptable form of identification and escalated the issue to Branch Manager Wendy Andrade ("Ms. Andrade").

8. Ms. Andrade informed Plaintiff that the Bank does not accept the mDL as identification.

9. Plaintiff asserted his belief that Utah law prohibits the denial of electronic records.

10. Ms. Andrade escalated the situation further through her argumentative tone and confrontational demeanor.

11. Plaintiff expressed his need for ADA accommodations due to non-physical disabilities.

12. Without first hearing the nature of Plaintiff's request, Ms. Andrade refused to provide accommodations for Plaintiff's non-physical disabilities, stating, "We don't do that."

13. Ms. Andrade claimed the Bank is obligated to provide only physical ADA accommodations mentioned on the Bank's website.

14. Plaintiff explained to Ms. Andrade that federal law mandates she engage in a discussion regarding his request for ADA accommodations.

15. Ms. Andrade responded by threatening to close Plaintiff's account after he asserted his civil rights under the ADA.

16. Ms. Andrade did not allow Plaintiff to explain that the accommodations he needed were intended to deescalate the situation and mitigate the effects of confrontation, which exacerbate symptoms of his disabilities, including emotional dysregulation and mania.

17. As a result, Plaintiff was unable to complete his transaction or discuss accommodations needed to prevent exacerbation of his disabilities.

18. Plaintiff audio recorded the incident, capturing Ms. Andrade's escalation, denial of Plaintiff's request for reasonable accommodations and threats to close Plaintiff's account.

19. Upon leaving, Plaintiff recalled a temporary Utah Driver's License in his car. However, feeling humiliated and uncertain whether his account had been closed, he did not return to the bank. The stress and anxiety caused by Ms. Andrade's escalatory and confrontational actions impaired Plaintiff's ability to recall this fact earlier.

20. Plaintiff felt devalued, experienced emotional distress and suffered mental anguish as a result of Ms. Andrade's denial of his civil rights.

21. Experiencing mania, Plaintiff reported the incident to the Bank's customer service line, which forwarded the complaint to the Office of the President ("the Office").

22. In its response, the Office attempted to use the mDL issue as a distraction from its failure to engage with Plaintiff's request for accommodations.

23. The Office's response to Ms. Andrade's violation of Plaintiff's civil rights primarily consisted of denials and defensive statements, offering no meaningful response or corrective action.

24. The Office did not indicate that it had undertaken any specific corrective actions—such as ADA training or policy changes—following Plaintiff's complaint.

## IV. CAUSES OF ACTION

### *Count I: Failure to Accommodate under Title III of the ADA—*

25. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 23 as though fully set forth herein.

26. The Bank violated its obligation under 42 U.S.C. § 12182(b)(2)(A)(ii) by refusing Plaintiff's request for reasonable modifications without considering their feasibility. This denial deprived Plaintiff of equal access to the Bank's services.

27. On November 6, 2024, the Bank, through its Branch Manager, Ms. Andrade denied Plaintiff's request for reasonable accommodations relating to his non-physical disabilities, stating, "We don't do that."

28. By refusing Plaintiff's request for reasonable accommodations as alleged in Paragraphs 7-17, the Bank violated its obligation under 42 U.S.C. § 12182(b)(2)(A)(ii) to provide equal access.

29. This failure to accommodate exacerbated Plaintiff's disabilities and caused him emotional distress and mental anguish.

### *Count II: Retaliation under the ADA—*

30. Plaintiff incorporates by reference the allegations set forth in Paragraphs 14-23 as though fully set forth herein.

31.  Under 42 U.S.C. § 12203, it is unlawful to retaliate against an individual for asserting their rights under the ADA.

32.  By threatening to close Plaintiff's account after he requested accommodations, the Bank retaliated against Plaintiff in violation of 42 U.S.C. § 12203. This action discouraged Plaintiff from asserting his rights under the ADA and caused significant emotional distress.

33.  Ms. Andrade's threat to close Plaintiff's account after he asserted his ADA rights was retaliatory under 42 U.S.C. § 12203 and caused Plaintiff fear of further discrimination.

## V. PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that the Court:

34.  Award compensatory damages—to be specified when Plaintiff files his Initial Disclosure—for emotional distress, public humiliation, mental anguish and other harms caused by the Bank's failure to accommodate under 42 U.S.C. § 12182.

35.  Award punitive damages under 42 U.S.C. § 12203 in an amount equal to 2x the compensatory damages to deter future retaliation, given the egregious nature of the Bank's conduct.

36.  Award attorneys' fees—should Plaintiff retain counsel—and court costs.

37.  Grant any other relief the Court deems just and proper.

## VI. VERIFICATION

I, Steven Ward James, pro se Plaintiff in this case, declare under penalty of perjury on this January 13, 2025, that the foregoing Complaint is true and correct pursuant to 28 U.S.C. § 1746.

Respectfully submitted,

_____
Steven W James
stevenwardjames@gmail.com
Pro se Plaintiff